Commonwealth of Pennsylvania, Department of Transportation, Appellant, *v.* Richard Kastner, t/a Liberty Bell Discount and Charles Podhaizer, t/a Big C Discount Department Store, Appellees.

Argued April 3, 1974, before President Judge Bow-MAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*George Bristol*, Assistant Attorney General, with him *Robert W. Cunliffe*, Deputy Attorney General, and *Israel Packel*, Attorney General, for appellant.

*David H. Moskowitz*, for appellee.

Opinion by Judge Wilkinson, May 20, 1974:

Appellees-condemnees' property, containing approximately eight acres on which is erected a sixty thousand square foot farmers' market and discount store with the remaining surface improved as hard surface parking, is located on the northerly side of Street Road near its intersection with U. S. Route 1 in Bucks County. Appellees-condemnees are the owners of the tract and the tenant. The Commonwealth has constructed a "bypass" for traffic on Street Road, vacating its old crossing of U. S. Route 1 and erecting a barrier where it previously crossed. The lower court, in its opinion, accurately portrayed the before and after condition with regard to this road network with the following diagrams:

Appellees-condemnees filed a petition for appointment of a Board of View pursuant to Section 504 of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, Special Sess., 26 P.S. §1-504. The Board of View was appointed and two hearings were held. Appellees-condemnees presented the testimony of two experts who testified that the appellees-condemnees had suffered a $340,000.00 or $350,000.00 loss as a result of

the change in the road network. The Commonwealth did not present any testimony, taking the position that the appellees-condemnees did not suffer any compensable damages. The Board of View concluded that the appellees-condemnees were not entitled to any damages under either Section 612 or Section 613 of the Eminent Domain Code, 26 P.S. §1-612 or §1-613.

On appeal to the Court of Common Pleas from the decision of the Board of View, it was stipulated that no questions of the constitutionality of Section 612 or Section 613 of the Eminent Domain Code would be raised, and the sole issue before the court below was the same as it is here, i.e., did the relocation of Street Road result in such substantial interference with access to appellees-condemnees' property so as to entitle them to compensation under Sections 612 and 613 of the Eminent Domain Code? The lower court found that it did, sustained the appeal from the Board of View, and referred the case back to the Board for the determination of the amount to which appellees-condemnees were entitled. We must reverse.

The case has been exceptionally well presented to the Board of View, exceedingly well analyzed and discussed by the Board of View in its decision and by the able court below in its opinion, as well as forcefully briefed and argued before this Court. This Court feels that the holding of our Supreme Court in *Hession Condemnation Case,* 430 Pa. 273, 242 A. 2d 432 (1968), *cert. denied,* 393 U.S. 1049 (1969), is controlling. It is agreed by all parties that no land has been taken, there has been no change in grade, and there has been no injury to surface support. It is entirely a matter of access.

No good purpose would be served by here repeating Justice ROBERTS' clear exposition of the law relating to this case in his opinion in *Hession.* He expressly dealt with the cases prior to as well as following the

adoption of the Eminent Domain Code in 1964, including *In re Melon Street,* 182 Pa. 397, 38 A. 482 (1897); *Breinig v. Allegheny County,* 332 Pa. 474, 2 A. 2d 842 (1938); *Spang & Co. v. Commonwealth,* 281 Pa. 414, 126 A. 781 (1924); as well as *Wolf v. Department of Highways,* 422 Pa. 34, 220 A. 2d 868 (1966), decided after the passage of the Code but under the law as it existed prior thereto when the case arose; and *Mitchell Condemnation Case,* 209 Pa. Superior Ct. 288, 228 A. 2d 53 (1967).[1] In *Hession,* Justice ROBERTS reviewed these cases and concluded that "where the result of a condemnor's action is to compel the allegedly affected property owner to travel a short distance farther to reach the system of streets going in a specific direction, this slight inconvenience is not compensable," 430 Pa. at 278, 242 A. 2d at 434.

Appellees-condemnees attempt to avoid the *Hession* decision by stating that in that case, there was an intersecting street between the property and where the street on which it fronted was closed. Putting it another way, appellees-condemnees argue that in *Hession,* access from only one out of four directions had been affected, whereas here it was affected in at least three out of the four directions, if not all four.

It is apparent to us that while appellees-condemnees and the court below agree that the appellees-condemnees are not entitled to damages for the loss of traffic occasioned by the re-routing on the new highway, nevertheless appellees-condemnees would have us hold that if the travelling public cannot see the property from the new traffic pattern, its "identification" is lost. By this, they attempt to avoid the appellant's proper

---

[1] A comprehensive collection of the cases in Pennsylvania as well as in other jurisdictions is published in a comment in 30 U. Pitt. L. Rev. 671 (1969), under the title, "Traffic Oriented Business and Highway Vacations: a Diversion."

argument that the short increased distance that a person must travel to get to the property may be more than offset in time travelled, using the new, improved traffic pattern, clover leafs, etc. It might also have been argued that under the new traffic pattern, a person moves with increased safety in obtaining access to the property.

The carefully considered opinion of the lower court falls into the same error of confusing loss of access and loss of traffic when it states: "We will not dwell on the distinctions between cases concerned with diversion of traffic and those concerned with loss of access, except to note that the former are clearly inapplicable to the facts of the instant case. Petitioners do not base their claim for compensation upon a showing that traffic has been re-routed so that it no longer flows directly past their door; rather, they contend that their land has, in effect, become landlocked because the circuitous route which *traffic* must now take to reach their door is so unreasonable as to constitute a loss of access." (Emphasis supplied.)

The following quotation from *Hession* could just as readily have been written of this case and its record: "The record before the viewers makes it evident that the damage suffered by appellees is a product of the fact that the elevated highway has transformed what was once a heavily traveled highway (State Road) into a street which carries primarily local traffic only.[1] In essence, appellees base their claim on a belief that

---

[1] "Prior to the construction of the elevated highway, State Road was used to avoid heavy traffic on both Torresdale and Frankford Avenues. The testimony of appellees' two real estate appraisers makes it evident that their estimates of the damage suffered is based totally upon loss of traffic. One appraiser characterized the present location of appellees' tavern restaurant as 'inconspicuous' while the other stated that the elevated highway had destroyed all 'profitable use' of the premises."

the change in the traffic pattern caused by the construction of the expressway and the concomitant decrease in the value of their land as a business property is compensable; they urge this Court to distinguish between properties used for business purposes and those employed as residences and contend that business establishments do have a compensable interest in the traffic pattern existing before a street has been vacated. This argument was considered and expressly rejected in Wolf v. Department of Highways, 422 Pa. 34, 220 A. 2d 868 (1966)." 430 Pa. at 278-79, 242 A. 2d at 434-35.

Accordingly, the order of the Court of Common Pleas of Bucks County is reversed and the record remanded with instructions to enter judgment for the Commonwealth.