In Re: Condemnation of 1315 to 1391 Washington Boulevard, City of Pittsburgh, Allegheny County, Pa. Commerce Land Corporation, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued November 1, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

Brian C. Schreiber, with him Marvin Schreiber, and Schreiber & Schreiber, for appellant.

Benjamin B. Wechsler, II, Special Assistant Attorney General, with him Robert W. Cunliffe, Deputy Attorney General, and Robert P. Kane, Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 27, 1978:

Appellant, Commercé Land Corporation, was originally before us during our Spring 1976 Session to appeal a decision of the Court of Common Pleas which sustained the preliminary objections of the Department of Transportation's (PennDOT/Appellee) petition for appointment of viewers pursuant to Section 612 of the Eminent Domain Code (Code).[1] At that time, we ordered a remand and instructed the court

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §1-612, states:

All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of

below to conduct a hearing and receive evidence regarding the extent of the circuitous travel necessitated by PennDOT's construction of a medial barrier limiting access to Appellant's property. *See Commerce Land Corp. v. Department of Transportation,* 25 Pa. Commonwealth Ct. 561, 361 A.2d 469 (1976). On remand, the court below, relying on *Department of Transportation v. Nod's Incorporated,* 14 Pa. Commonwealth Ct. 192, 321 A.2d 373 (1974), reiterated its earlier decision and held that the necessity to travel a circuitous route (at least up to four miles) will not give rise to a claim under Section 612 of the Code, 26 P.S. §1-612. We affirm.

The record produced on remand reveals that Appellant is the owner of a truck terminal located in the Pittsburgh Metropolitan Area; that the construction of a medial strip along the center line of the road providing access to the terminal restricted ingress and egress to vehicles traveling in a southerly direction; that PennDOT acquired no additional land to effectuate the medial barrier construction; and that two alternative routes are available to obtain northbound access, each involving circuitous travel amounting to 2.35 and 2.80 miles, respectively.

Appellant contends that the restricted access occasioned by PennDOT's construction has rendered its property totally useless as a truck terminal and argues that the court below erred in failing to consider the particular characteristics of the terminal or that it had not determined whether there has been an unreasonable denial of access.[2]

---

a road or highway, *permanent interference with access thereto, or injury to surface support whether or not any property is taken.* (Emphasis added.)

[2] Upon completion of PennDOT's medial strip construction, Appellant closed its terminal for approximately two years during which it was redesigned for warehousing purposes.

PennDOT answers that the damage suffered by Appellant is *damnum absque injuria* and therefore not compensable.

In pursuing its argument, Appellant relies on *Finkelstein v. Department of Transportation*, 23 Pa. Commonwealth Ct. 628, 354 A.2d 14 (1976), wherein we held that PennDOT's construction of curbing along the perimeter of a commercial property, precluding all access, was unreasonable and constituted an act of condemnation.

Clearly, *Finkelstein, supra,* is inapposite to the case at hand. Appellant's access is merely restricted, not totally precluded, and the circuitous travel necessitated by the restriction is not so unreasonable as to constitute a taking within the meaning of the Code, 26 P.S. §1-101 et seq.

We have dealt with several cases concerning the restriction of access occasioned by road improvements and have consistently followed the pronouncements of our Supreme Court in *Wolf v. Department of Highways,* 422 Pa. 34, 220 A.2d 868 (1966), and in *Hession Condemnation Case,* 430 Pa. 273, 242 A.2d 432 (1968), holding that a *reasonable restriction* to an abutting property owner's right to access does not give rise to a compensable claim under Section 612 of the Code, 26 P.S. §1-612. *See Brill v. Department of Transportation,* 22 Pa. Commonwealth Ct. 202, 348 A. 2d 451 (1975) ; *Nod's Incorporated, supra; Department of Transportation v. Kastner,* 13 Pa. Commonwealth Ct. 525, 320 A.2d 146 (1974), *cert. denied,* 419 U.S. 1109 (1975).

The reasonableness of the interference to access must be viewed in light of the Commonwealth's police powers. In *Hession, supra,* 430 Pa. at 279-80, 242 A. 2d at 435-36, our Supreme Court wrote:

'[t]he right of ingress or egress to or from one's property [does not] include any right in and to

the existing public traffic on the highway, or any right to have such traffic pass by one's abutting property. The reason is that all traffic on public highways is controlled by the police power of the State, and what the police power may give an abutting property owner in the way of traffic on the highway it may take away, and by any such diversion of traffic the State and any of its agencies are not liable for any decrease in property values by reason of such diversion of traffic, because such damages are 'damnum absque injuria,' or damage without legal injury. . . .'

In *Kastner, supra,* PennDOT redesigned and relocated U.S. Route 1, thereby eliminating Kastner, owner of a 60,000 square foot farmers' market and discount store, as an abutting property owner on that road. Kastner alleged that his property was effectively landlocked, that it was not visible from the relocated U.S. Route 1, and that it suffered a loss of business and a decline in property value amounting to approximately $350,000. There we held that merely the fact that Kastner's property was a commercial property was not dispositive and that the limitation to access was not unreasonable. Although the circuitous travel necessitated by PennDOT's construction here is considerably greater than that involved in *Kastner, supra,* the principles enunciated in *Kastner* control.

The record reveals that Appellant's terminal was utilized by both local and inter-city/inter-state haulers, that the local haulers could adjust their routes to avoid the inconvenience and circuity necessitated by PennDOT's construction, and that the inter-city/inter-state haulers were required to travel a maximum distance of 2.80 miles, which consumed a maximum of 20 minutes, to gain northbound access to or from Ap-

pellant's property. In our judgment, this inconvenience is not so unreasonable as to constitute a taking within the meaning of Section 612 of the Code, 26 P.S. §1-612.

We conclude that the court below neither abused its discretion nor committed an error of law.[3]

Accordingly, we

ORDER

AND Now, this 27th day of March, 1978, the order of the Court of Common Pleas of Allegheny County is affirmed.

---

[3] In a condemnation case, review by our Court is to determine whether the lower court abused its discretion, whether an error of law was committed, or whether the findings and conclusions are supported by sufficient evidence. *See Penn Iron Works, Inc. v. Department of Transportation,* 13 Pa. Commonwealth Ct. 532, 320 A.2d 846 (1974).